**Rita Jean DECKER–GREGG**

v.

**Dr. M. G. SCARLETT et al.**

**No. 74–245–NA–CV.**

United States District Court,
M. D. Tennessee,
Nashville Division.

Feb. 12, 1975.

---

1. *See also*, Umbaugh v. Hutto, 486 F.2d 904, 906–907 (8th Cir. 1973).

W. A. Moody, Nashville, Tenn., for plaintiff.

Henry Haile, Asst. Atty. Gen., Nashville, Tenn., for defendants.

## MEMORANDUM

MORTON, District Judge.

The plaintiff, Rita Jean Decker-Gregg, brings suit pursuant to 42 U.S.C. § 1983 for deprivation of her civil rights as secured by the Constitution of the United States.

Plaintiff was formerly a nontenured teacher at Middle Tennessee State University (MTSU), a university owned and operated by the State of Tennessee. She was first hired as an assistant professor in the Department of Sociology at MTSU for the academic year 1970–71. Her employment was renewed for the years 1972–73 and 1973–74. On August 14, 1973, she was notified by her department head that her contract of employment would not be renewed for the academic year 1974–75.

Plaintiff alleges that her teaching contract was not renewed because of the fact that she exercised her constitutional right of free speech by attacking sexually discriminatory practices allegedly prevalent at MTSU. She further alleges that she had a property interest in her job which was sufficient to require that the defendants afford her a due process hearing regarding the grounds for her nonrenewal. Plaintiff also alleges that certain language in the 1970 MTSU Faculty Handbook guarantees a due process hearing upon appeal of nonrenewal. In summary, plaintiff contends that the defendants violated her First and Fourteenth Amendment rights by their actions in not renewing her employment contract and in refusing to grant her a due process hearing.

The policy at MTSU is to employ teachers annually for a probationary period of five years, after which time they

are granted tenure if their services have been satisfactory. Ms. Decker-Gregg was apparently hired on this basis.

The only written contract in this case is the 1970–71 "Contract of Employment" between Ms. Decker-Gregg and MTSU. Apparently, it is the policy of the school to issue no further written contracts after the initial appointment. Instead, nontenured teachers are notified by the department head and dean concerning whether or not they will be rehired for the following year.

The 1970–71 contract between Ms. Decker-Gregg and MTSU is a mimeographed "form" contract with blank spaces in which the appropriate information is inserted. The contract consists of a single page, which reads as follows:

### CONTRACT OF EMPLOYMENT

This is a contract of employment between Middle Tennessee State University, party of the first part, and Rita Jean Decker-Gregg, party of the second part. In keeping with previous conversation and correspondence, Middle Tennessee State University agrees to employ Rita Jean Decker-Gregg, as Assistant Professor in the department of
(Rank or Position)
Sociology, for the year 1970–71 at a salary of $10,500 for the academic year beginning with the opening of the fall semester and closing at the end of the spring semester.

Rita Jean Decker-Gregg understands and agrees to the following conditions of employment:

1. There is no expressed or implied guarantee or obligation for summer school employment.

2. The above salary shall be paid in twelve (12) separate checks, beginning September 30 and ending August 31.

3. He shall schedule a minimum of 30 hours per week on the campus, including class hours, laboratories, committee work, office hours, student counseling and other duties normally expected of a faculty member.

4. He shall attend all regularly scheduled student assemblies, faculty meetings, and convocations unless excused by the administration.

5. This contract shall be on an annual basis until he attains tenure which is not automatic and is normally attained at the end of five years of satisfactory service. The contract will be reviewed annually until tenure is acquired.

Comments: _____

_____

Signed: /s/ M. G. Scarlett by H. G. Kirksey     July 29, 1970
       President, Middle Tennessee State University    Date

       /s/ Rita Jean Decker-Gregg     August 4, 1970
       Party of the Second Part     Date

The court notes that there is no specific provision for renewal of the contract except the one for "review" found in provision 5 under "conditions of employment." After the first year, nontenured teachers are apparently rehired on the basis of an oral agreement between the teacher involved and the University. Thus, the probationary period involves a series of one-year employment contracts.

■ We will first consider plaintiff's claim that nonrenewal of her contract was based on the fact that she made speeches attacking sexually discriminatory practices of MTSU. If it were true that MTSU did not renew Decker-Gregg's employment contract in reprisal for her exercise of the First Amendment right to free speech, this would be an impermissible infringement and a valid cause of action under § 1983. Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

■ However, the evidence developed at trial does not bear out Ms. Decker-Gregg's claim. From the testimony of the witnesses, this court is convinced that the University's decision not to renew the plaintiff's contract was based on her poor performance as Director of the Tennessee Institute on the Aging and on the fact of her personality conflicts with numerous colleagues. There was no credible testimony at trial to show that Ms. Decker-Gregg's criticism of MTSU policies had any bearing on the decision not to renew her contract.

■ Plaintiff's claim that she had a property interest in her job and in the renewal of her contract that was sufficient to require a due process hearing on her nonrenewal must also fail. The simple fact is that plaintiff was a nontenured teacher at MTSU. Plaintiff may have had a subjective expectation that her contract would be renewed, but a subjective expectation of employment is not protected by procedural due process.

Lukac v. Acocks, 466 F.2d 577 (6th Cir. 1972). While a plaintiff need not show formal tenure to invoke due process protection, it must appear that the policies and practices of the institution at least rise to the level of implied, or de facto, tenure. Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

■■ The policies of MTSU regarding tenure are clearly outlined in the Faculty Handbook, and there can be no doubt that Ms. Decker-Gregg was a nontenured teacher. Unless a nontenured teacher can show either "implied tenure" or that his nonrenewal was predicated upon reprisal for exercising his First or Fourteenth Amendment rights, the Constitution does not require opportunity for a hearing before his nonrenewal. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Neither does the Constitution require that a nontenured teacher whose contract is not renewed be given a statement of the reasons for the institution's decision in his case. Board of Regents v. Roth, supra.

■ Ms. Decker-Gregg contends that certain language in the 1970 MTSU Faculty Handbook gave her a right to appeal and to a due process hearing with regard to the nonrenewal of her contract. The language alluded to is found on page 15 of the 1970 Handbook:

> In the eventuality any faculty member on probation wishes to appeal the recommendation concerning his continuing, the appeal should be filed with the Dean of Faculties. A hearing in accordance with due process procedure will be provided.

In the 1972 Faculty Handbook, a portion of the first sentence quoted above was changed from ". . . should be filed with the Dean of Faculties" to ". . . should be filed with the Vice President for Academic Affairs." The last sentence, regarding the due process

hearing, was blacked out completely in the 1972 Handbook. This was a result of the Supreme Court's June decision in the *Roth* case, *supra*. The blacking out was necessitated by the fact that the 1972 Handbook had already been printed by the time the *Roth* decision was announced.

As we have stated previously, the probationary period of teachers at MTSU actually involves a series of one-year contracts. The first one is written, and succeeding contracts are oral agreements incorporating the terms of the original written contract and current MTSU policies as set forth in the Faculty Handbook.

The court fails to see how a University policy in effect for the 1970 one-year contract, but subsequently changed, can extend to the contracts made after that change. After the fall of 1972, it was clear that the University had not bound itself to afford nontenured teachers a due process hearing when they appeal the nonrenewal of their employment contracts. Under the decision in *Roth, supra,* the University clearly had no Constitutional obligation to afford plaintiff, a nontenured teacher, a due process hearing. In the 1972 Handbook, it appears equally clear that the University did not intend to undertake such an obligation.

In the final analysis, the controlling factor in this case is simply that plaintiff was a nontenured employee, and as such had no property interest in her contract renewal to which Constitutional due process protection could extend. With regard to her contention that the nonrenewal was based on constitutionally impermissible grounds, plaintiff failed to meet her burden of proof at trial.

For the foregoing reasons, plaintiff's request for relief in this cause is denied and the case is dismissed.

An appropriate order will be entered.